## SOUTHERN TRACTION CO. v. OWENS.
### (No. 7755.)

(Court of Civil Appeals of Texas. Dallas. June 23, 1917. Rehearing Denied Oct. 17, 1917.)

**1. RAILROADS ⬢⟳301—INJURIES AT CROSSING —DUTY OF ROAD AND USER OF CROSSING.**

It was the duty of an interurban railroad's servants in approaching a crossing, where the view of those using it was somewhat obstructed, to exercise ordinary care in the operation of the car, and it was likewise the duty of one driving a wagon over the crossing to exercise ordinary care in so doing.

**2. RAILROADS ⬢⟳346(1, 5) — INJURIES AT CROSSING—EXERCISE OF ORDINARY CARE— PRESUMPTION.**

In absence of testimony, the law presumes that both an interurban railroad and one driving a wagon over its crossing were exercising ordinary care.

**3. RAILROADS ⬢⟳346(1, 5) — INJURIES AT CROSSING—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.**

In an action for injuries at an interurban railroad's crossing, it was plaintiff's duty to introduce such testimony as would establish prima facie that the road's servants were not exercising ordinary care in the operation of its car at the time of the collision, and it was the road's duty, to rebut such prima facie case, to prove that the driver of the wagon in which plaintiff was injured was not in the exercise of ordinary care, or was guilty of contributory negligence.

**4. RAILROADS ⬢⟳350(1, 13) — INJURIES AT CROSSING—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE—QUESTIONS OF FACT.**

Whether an interurban railroad and one injured on its crossing exercised ordinary care is a question of fact for the jury, save where there is, under the facts deducible from the evidence, no room for ordinary minds to differ.

**5. RAILROADS ⬢⟳350(13) — INJURIES AT CROSSING — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.**

In an action against an interurban railroad for injuries in collision with its car on its crossing, evidence *held* not to show as a matter of law that the driver of the wagon in which plaintiff rode was negligent, constituting the sole cause of the collision.

**6. RAILROADS ⬢⟳350(7)—INJURIES AT CROSSING — WARNING WHISTLE — QUESTION FOR JURY.**

Whether defendant's motorman blew a warning whistle as his car approached the crossing *held* for the jury.

**7. RAILROADS ⬢⟳350(11)—INJURIES AT CROSSING—NEGLIGENT SPEED OF CAR—QUESTION FOR JURY.**

The question whether defendant was negligent in propelling its car toward the crossing at a speed of 40 miles an hour or more *held* for the jury.

**8. NEGLIGENCE ⬢⟳93(1) — IMPUTED NEGLIGENCE—DRIVER AND PASSENGER.**

Where it does not appear that a passenger in a wagon was in any respect responsible for the acts of the driver of the wagon, the driver's negligence in going upon an interurban rail-

road's crossing cannot be imputed to his passenger, unless it was the sole cause of injury.

**9. RAILROADS ⬢⟳352—ACTION FOR CROSSING ACCIDENT — ANSWER TO SPECIAL ISSUE — PROPRIETY.**

The answer of the jury to a special issue, inquiring whether those in charge of the car failed to sound the whistle as it approached the crossing, that they failed to sound it at the proper time was proper and responsive.

**10. DAMAGES ⬢⟳168(2)—INJURIES AT CROSSING—EVIDENCE—CONDITION AFTER INJURY.**

It was proper for plaintiff to show his inability to use his leg after the crossing accident, and the showing was not necessarily objectionable because it appeared on the witness' voir dire examination that plaintiff had been subjected to another accident after the crossing accident, the witness testifying that he could not swear that plaintiff would or would not have limped but for the second accident.

**11. APPEAL AND ERROR ⬢⟳1050(1)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Error in the admission of such testimony was harmless to the railroad, the answer of the witness disclosing that plaintiff limped after the second accident.

**12. DAMAGES ⬢⟳100—MEASURE OF—PERSONAL INJURIES TO MINOR — IMPAIRMENT OF EARNING POWER.**

An injured party's minority has nothing to do with the amount to be awarded as damages in his action for injuries, except that damages for loss or impairment of capacity to labor and earn money is confined to time following his majority.

**13. DAMAGES ⬢⟳95—MEASURE OF—PERSONAL INJURIES.**

A minor or adult suing for personal injuries is entitled to recover such a sum as would, in the jury's opinion, compensate him in the items sued for if paid in cash at the time of the trial.

**14. DAMAGES ⬢⟳216(1) — PERSONAL INJURY —INSTRUCTION.**

In an action for injuries on crossing, against an interurban railroad, after advising the jury of the elements of damage accruing to plaintiff which they might consider, and correctly limiting any loss or impairment of his capacity to labor to that sustained after majority, it was proper to ask the jury to say what amount of money, if paid then in cash, would compensate plaintiff for any injury he might have sustained as the result of the accident, and not objectionable as not permitting the jury to award plaintiff a sum, paid presently, less than he would be entitled to when 21.

**15. DAMAGES ⬢⟳210(1) — TRIAL ⬢⟳337 — INSTRUCTION—ELEMENTS OF DAMAGE.**

It is the trial court's duty to furnish the jury the elements of damage which may be considered by them, and if correct elements are defined, the jury are restricted thereto.

**16. DAMAGES ⬢⟳95 — PERSONAL INJURIES — ELEMENTS OF DAMAGE.**

The elements of damage recoverable by plaintiff from the interurban railroad which injured him at its crossing were physical and mental pain suffered, or which might be suffered, and any loss or impairment in capacity to labor and earn money.

**17. TRIAL ⬢⟳420—SUBMISSION ON SPECIAL ISSUES—GENERAL CHARGE.**

The case being submitted to the jury on special issues, defendant was not entitled to the general charge.

**18. TRIAL ⬢⟳191(8), 253(4) — INSTRUCTION — ASSUMPTION OF FACTS—ELIMINATION OF ISSUES.**

In an action against an interurban railroad for injuries at its crossing, the road's requested charge, on the issue of discovered peril, which

---

⬢⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

assumed material facts in dispute by the evidence, and would have eliminated every issue save that of discovered peril, was properly refused.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by Buford Owens, minor, against the Southern Traction Company. From a judgment for plaintiff, defendant appeals. Affirmed.

J. J. Averitte, of Houston, and Wear & Frazier, of Hillsboro, for appellant. Shurtleff & Cummings and Walter Collins, all of Hillsboro, and Chas. L. Black, of Austin, for appellee.

RASBURY, J. Appellee, Buford Owens, by next friend, George Mahurin, sued appellant for damages for personal injuries received by appellee as the result of a collision between one of appellant's interurban cars and a wagon drawn by two mules in which appellee was a passenger at a point in Hill county where appellant's railway crosses the public wagon road. The negligence alleged as the proximate cause of the injury was the failure of the agents and servants of appellant to sound the whistle or give other warning of its approach, and the speed at which the car was operated in the light of the conditions surrounding the crossing where the collision occurred. Appellant pleaded contributory negligence, denied the extent of appellee's injuries, and alleged that at the time of the collision its car was being competently operated and was running with care and caution. There was trial before jury, to whom the facts were submitted upon special issues and upon the answers to which issues judgment was entered by the court in favor of appellee for $3,570, from which this appeal is prosecuted.

The evidence adduced by appellee on trial tended to establish these facts: Appellee, whose home was in Arlington, was visiting his uncle, J. A. Dillon, of Hillsboro. On the day of the collision Dillon and his son and appellee were returning in a covered wagon to Hillsboro from Milford, whence they had gone for the purpose of marketing watermelons. The covering of the wagon consisted of a cloth or sheet drawn over the usual wagon bows. The front of the covering was open. On the sides between the first three bows the covering was drawn up by cords so as to furnish ventilation. About 4:30 o'clock of the afternoon the party reached the point of the collision, known as "Simmons Stop," where appellant's line of railway crosses the public road. Due to the elevation of the land or appellant's dump the tracks at said crossing are approximately 8 feet higher than the road on which Dillon was traveling, and are reached by incline commencing about 60 feet back from the tracks. The railway at said point runs approximately north and south, and at the time Dillon approached the tracks he was going west. His view south

from whence the car came which struck his wagon was obscured by appellant's trolley poles, by weeds growing upon the dump and right of way, and by a barn 360 feet from the crossing, and which is about 50 or 75 feet away from and east of the railway track. Dillon drove his mules in a walk up the incline to within 30 feet of the railway tracks, at which point he rose from his seat and looked both ways for approaching cars and called to his son and appellee, who were on the floor of the wagon, to do so, which they did, and no car was in sight. About this time his mules started into a trot due to seeing Dillon's whip in his hand, and at which time presumably his attention was given to his team. When the front wheels of Dillon's wagon were over the rail nearest him he and his son and appellee nearly simultaneously saw an approaching car near Snearley's (being the residence to which the barn referred to was connected, the residence to the west and the barn to the east of the tracks), about 400 feet away. Dillon began whipping his mules when he saw the car, but did not avoid the collision. The car struck the hub of the rear wheel of the wagon. As a result appellee was seriously injured. The car approached the crossing at approximately a speed of 40 miles an hour, and failed to blow its whistle or sound its gong.

While the finding of the jury is to be regarded from the standpoint of the facts deducible from appellee's testimony, it is proper to say that appellant's testimony tended to show, as reflected by the testimony of the employé operating the car at the time of the collision, that the whistle was blown, first, about 1,000 feet from the crossing, being the regular whistling point indicated by signal post, and, second, at a point about 600 feet from the crossing, at which point the operator first saw the wagon, and, third, when about 400 feet from the crossing, at which time the operator cut off the current and put on the emergency brakes. The operator also stated at another point that he first saw Dillon when the car was opposite the barn. When he first saw the team about 600 feet away it was about 30 feet from the track, approaching slowly. When he was about 400 feet away the team apparently halted about 10 feet from the crossing and started up again, which was the first indication the operator had that Dillon was going to attempt to cross in front of the car, and at that time the operator could not have halted his car in time to have avoided the collision. Further, it may be said that appellant's testimony would have supported a finding that after passing the barn there was no obstruction of Dillon's vision from that point to the crossing.

The foregoing constitute generally the facts fairly deducible from the evidence favorable to the respective parties. There are many circumstances and collateral facts shown in the record, favorable and unfavor-

able to the verdict, which we have not stated for the reason that, weighed pro and con, they neither add to nor detract from the sum of the facts fairly testified to by the witnesses on both sides.

The first assignment of error complains of the refusal of the trial court to peremptorily instruct verdict for appellant. The contention made under authority of said assignment is that the evidence shows without dispute that appellant was not guilty of any negligence proximately causing appellee's injuries, but does show that the negligence of J. A. Dillon was the sole proximate cause thereof, which is but to say that the verdict of the jury is without support in the evidence.

[1-4] Under the facts recited in the instant case it was the duty of appellant's servants in approaching the crossing to exercise ordinary care in the operation of the car which collided with Dillon and his team. It was likewise the duty of Dillon to exercise ordinary care in driving across the tracks of appellant's railway. The law presumes, in the absence of any testimony, that both were exercising that degree of care. Thus it results that it was the duty of appellee to introduce such testimony as would establish prima facie that appellant's servants were not exercising ordinary care in the operation of its car at the time of the collision and the duty of appellant, in order to rebut such prima facie cause, when made, to prove that Dillon was not in the exercise of ordinary care, or was guilty of contributory negligence at the time of the collision. Whether the respective parties exercised ordinary care is a question of fact for the determination of the jury, save in cases where there is, under the facts deducible from the evidence, no room for ordinary minds to differ, in which cases, of course, the right to verdict arises as matter of law in favor of one or the other of the parties. Lee v. Railway Co., 89 Tex. 583, 36 S. W. 63. There are numerous other cases before and after the one cited announcing the rules stated. We select the case cited merely because it announces both rules, and because both rules are involved in the instant suit. The inquiry then is, What was the conduct of the respective parties at the time of the collision? The testimony of Dillon and appellee is that, when within 30 feet of the tracks, at the suggestion of the former, both, conscious of their duty in such cases, looked for approaching case, Dillon by rising from his seat and leaning forward, the mules being in a walk, and appellee by crawling on his hands and knees to about the center of the wagon and looking from that point. Neither saw a car. Prior and up to this period neither had heard a whistle or gong or other sound indicating the approach of the car. At the time Dillon looked one or both of the mules saw his whip and accelerated their speed, and when the front wheels of the wagon were just over the nearest rail, both Dillon, his son, and appellee saw a car approaching, Dillon placing it at about 400 feet distant and appellee about 300 feet. The car struck the hub of the rear wheel nearest the car. Tending to support the claim of Dillon and appellee was the testimony of the witness Ivey, who was in a cornfield on the same side of the railway from which Dillon approached the crossing. This witness says, in effect, that he had the same view of the track that Dillon had, and that when he first saw the car come from behind the barn, or a distance from the crossing of about 300 feet, the mules were in a walk, and, if not upon the tracks, but a few feet therefrom.

[5] Do the facts as generally outlined above disclose that Dillon was guilty of such acts of negligence as constituted the sole cause of the collision? We think not. Dillon was rightfully upon a public thoroughfare, and had a corresponding right to cross the railway track in his journey, and, after looking for approaching cars and seeing none and hearing no whistle, gong, or other sound of approaching cars, had the right to assume the way was safe. Certainly such facts were sufficient to carry to the jury the fact issue of the exercise of ordinary care, since it cannot be fairly said in the light of such testimony that there was no room for ordinary minds to differ as to the conclusions to be drawn from it. To be sure if there was "some inherent reason in the testimony for setting it aside as untrue," or if "some other conclusively established fact" demonstrated the falsity of the testimony relied on by appellee, it would present a case without the rule. Railway Co. v. Fuller, 13 Tex. Civ. App. 151, 36 S. W. 319. No such condition is made to appear, nor does it arise upon the facts proven.

[6] Then does the evidence fail to support the finding against appellant, as urged by counsel? The first inquiry in that connection being the alleged failure to warn Dillon of the approach of the car. As relates to any warning by whistle, gong, or otherwise, Dillon, appellee, and the witness Ivey all testified they heard no such warning, and the conclusion to be reached from their testimony is that they could have heard it had it been given. Two witnesses for appellant, passengers on the car, say if any signal was given, they did not notice it. On the contrary, appellant's servants, the motorman and the conductor, state without qualification that the whistle was blown at the signal post 1,000 feet from the crossing, and again at a distance of about 600 and 400 feet therefrom. The evidence, it seems to us, presents nothing less than a conflict. That it affords sufficient basis for the finding of the jury it seems to us is beyond controversy. We do not think the case is similar to Railway Co. v. Kutac, 76 Tex. 473, 13 S. W. 327. From

the report of that case it would seem that the court decided, in view of the fact that all who witnessed a crossing accident testified they heard the whistle blown, save plaintiff and his driver, who testified they did not hear it, a submission of the issue was not authorized by the evidence. While the opinion does not disclose all the proof adduced on that issue in the Kutac Case, the rule prevailing then in reference to issues raised by the evidence was not different from what it is now, and it must be assumed that the testimony was so overwhelmingly opposed to or preponderatingly against the negative statement of Kutac and his driver as to strip the same of any probative force. Something of the kind necessarily was disclosed by the record. Further, it may be said in the present case that all the witnesses, save the motorman and the conductor, in effect, testified that the whistle did not blow. While in the nature of things the latter would apparently be in a better position to recall the circumstance, because it was their duty to perform the act, at the same time duties are often neglected, and the neglect as often observed by others. At least we think the testimony was sufficient to raise the issue and require its presentation to the jury, and that the relation of appellant's witnesses to the act presents at most an issue of the weight to be attached to the respective statements of the witnesses.

But it is argued that, even if the warning was not given, it does not appear that that fact in any manner contributed to the injury. To this suggestion we cannot assent, since it appears to us to be unsound. The place chosen for sounding such warnings are at such points as will doubtless be heard by those approaching the crossing, and that one hearing it would heed the warning we think obvious. Just where Dillon was when the whistle was blown is difficult to approximate, but that he was near enough to have heard it if it had been blown is a reasonable deduction to be drawn from the location of the signal post and the speed of the car and the probable nearness of Dillon.

[7] We come next to the contention that the evidence will not support the finding of the jury that the speed at which the car approached the crossing was, under surrounding conditions, negligence. Only one witness estimates the speed of the car under 40 miles an hour. One places it at 50 miles. A speed of 40 miles per hour, reduced to feet and seconds, will show a speed of 58⅔ feet a second. The distance from the barn to the crossing, while variously estimated, seems conceded to be actually 360 feet. It is reasonably certain that Dillon's view of the car was obstructed until the car passed or reached the barn. No witness testified exactly to that fact, but the inference is clear, particularly from the evidence of Ivey, who says the view was unobstructed for a hundred yards, which would be 60 feet north of the barn. The operator of the car testified when he first saw Dillon approaching the crossing the car was approximately 600 feet away, but at another place he testifies that when he first saw Dillon he was "up about the barn," so that any inconsistency lies rather in estimating the distance from a point approximately opposite the barn than in the conclusion that the view of the track is in fact obstructed beyond the barn. Dillon testified that weeds upon the right of way and the trolley poles further obstructed his view, and the witness Snearley testified that weeds were growing upon the right of way, some knee-high, some waist-high, and some higher, and that they were cut after the accident. Other witnesses dispute such claim, among them Ivey, and inferentially the appellee. Propelling a car at a speed of 40 miles an hour might not, in some cases, constitute a failure to exercise ordinary care. In some cases it might. In the instant case the trial court concluded that under all the facts the issue of negligence in that respect was raised, and we are unable to say that his action was error. If appellant's servants failed to blow the whistle or sound the gong at the signal post, and if the barn obstructed the view of a person at the crossing, and such view was further obstructed by weeds and trolley poles, the exercise of ordinary care would have suggested a less speed, when it is considered that the car would have covered the distance from the barn to the crossing in approximately six seconds. The facts we have stated were before the jury, and if they believed them, they were sufficient to support a finding that the speed was negligent. Further, it may be conceded that the view from the barn to the crossing was unobstructed and yet it appears, if no warning was given, it would have been impossible to check the car at the speed it was going after the operator of the car saw Dillon to have avoided the collision, which fact should have suggested a lessened speed. For the reasons stated we conclude we are without authority to hold that the court erred in submitting as a question of fact the excessive speed of the car.

The issues discussed in the foregoing pages are repeated by challenging each step in the proceeding, in the second, third, fourth, fifth, sixth, eighth, ninth, twelfth, and thirteenth assignments, for which reason it will not be necessary to discuss those assignments seriatim.

[8] We have not discussed the question of contributory negligence on the part of Dillon. While the jury declared in their findings that he was guilty of contributory negligence, but that such negligence was not the proximate cause of the collision, a discussion of the correctness of either finding is imma-

terial, since the contributory negligence of Dillon could only become a controlling issue between him and appellant, for the reason Dillon's negligence cannot be imputed to appellee, it failing to appear from the evidence that appellee was in any respect responsible for the acts of Dillon. Railway Co. v. Gibson, 83 S. W. 862.

[9] By the seventh assignment it is urged that the answers of the jury to special issue No. 3 is improper and unresponsive and cannot form the basis of the court's judgment. Special issue · No. 3 inquired of the jury whether those in charge of the car failed to sound the whistle as it approached the crossing, the answer being that they "failed to sound it at the proper time." We believe the answer to be an intelligent one and consistent with the jury's theory of the facts, for the reason that there was evidence, practically without dispute, that the whistle was sounded when the car was nearly upon Dillon. There also was testimony that the whistle was blown at the signal post and testimony that it was not. In answer to the specific question whether the whistle was blown at the signal post, the jury replied it was not, but in answer to the question whether it was blown at all, they said it was not blown at the proper time. It occurs to us that, in answering the general query complained of, it was the purpose of the jury to make such answer consistent with the facts and the finding that the whistle was not blown at the signal post and that it was both proper and responsive.

By the tenth and eleventh assignments of error it is asserted that the finding of the jury that Dillon was guilty of negligence in driving upon the crossing when he did and the further finding that such negligence was not the proximate cause of appellee's injury is without support in the evidence. We conclude the assignments present no reversible error. If it can be said that the evidence will support the finding of the jury that Dillon was negligent in approaching the crossing, it can with equal consistency also be said that appellant's servants were negligent in the operation of its car, leaving open the issue as to whose negligence, as between them, proximately caused the collision, but leaving that issue as to appellee without controlling force because Dillon's negligence may not, as stated be imputed to appellee, unless it was the sole cause of the injury.

[10, 11] The fourteenth assignment challenges the action of the court in admitting certain testimony of George Mahurin, stepfather to appellee, who, while testifying, was asked by counsel for appellee in substance whether appellee since the crossing accident had been able to walk without limping. At request of counsel for appellant the jury was retired, and on voir dire the witness stated that appellee, after he had recovered from his injury sufficiently to walk without crutches and was attending school, had another accident, by which the same leg was broken, and that he could not swear that he would or would not have limped but for the second accident. Thereupon counsel for appellant objected to the question, which was improper in not limiting the inquiry to injuries received in the first accident. The objection was overruled, and the witness answered "he has limped after the second accident." In our opinion it was proper and material for appellee to show his inability to use his leg after the crossing accident. It was with reference to that accident that the inquiry was made, as appears from the question, and it was not necessarily objectionable because it appeared on voir dire examination that appellee had been subjected to another accident. Counsel for appellant evidently knew that there had been a subsequent accident, and it may have been that any limping at the time was ascribable to the latter accident, but we do not think appellant was entitled, for that reason, to frame the question by objections so as to disclose a fact that appellee did not deem proper to raise at that juncture. Further, if the voir dire examination was the first knowledge of the subsequent accident on the part of appellant, that examination in fact disclosed it, and afforded appellant the opportunity to take the matter up where appellee left it. Finally, the proceeding was harmless, since the answer of the witness disclosed that appellee limped after the second accident, which it seems could not have been of controlling force with the jury on that issue.

[12, 13] The twenty-first and twenty-second assignments of error challenge the court's charge on the measure of damages and the manner of submitting the issue. By special issue No. 6, the court inquired of the jury in substance what amount of money, if paid then in cash, would compensate appellee for any injury received by him at the time of the accident as the direct and proximate result thereof. In connection with such inquiry the court instructed the jury, in substance, that in estimating appellee's damages, if any, they should consider the following elements only: Physical or mental pain suffered by appellee, or which he might suffer in the future as the direct and proximate result of the injury received at the time of the accident, and any loss or impairment of his capacity to labor and. earn money after arriving at 21 years of age, as the direct and proximate result of any injury received at the time of said accident. The charge contained other formal parts, including the requirement that the jury find that appellee had been actually injured. The first criticism of the charge is, in effect, that it does not permit the jury to award appellee a sum, paid now, less than he would be en-

titled to when 21 years of age. We do not understand that the injured party's minority has anything to do with the amount to be awarded as damages, save that any damages for loss or impairment of capacity to labor and earn money is confined to the time following his majority. Another rule, of course, obtains in suits by parents for loss to them in cases of injury to their children. Such party, whether minor or adult, is entitled to recover such a sum as would, in the opinion of the jury, compensate him in the items sued for if paid in cash at the time of the trial.

[14-16] After advising the jury of the elements of damage accruing to appellee, which they might consider, and correctly limiting any for loss or impairment of capacity to labor, etc., as appears from the special issue, the court asked the jury to say what amount of money, if paid then in cash, would compensate appellee for any injury he may have sustained as the result of said accident, etc. The charge is, in our opinion, correct and not subject to the criticism directed against it. It is also argued that the charge is upon the weight of the evidence, because the elements of damages submitted for consideration provides the jury the viewpoint only of the court and precludes independent conclusions by the jury. It is the duty of the court to furnish the jury the elements of damage which may be considered by them, and if correct elements are defined, the jury are restricted thereto. The elements submitted by the court to the jury are correct, since they are physical and mental pain suffered or which may be suffered, and any loss or impairment of appellee's capacity to labor and earn money.

[17,18] The twenty-sixth assignment of error complains of the refusal of the court to allow a general charge on the issue of discovered peril. The case being submitted to the jury on special issues, appellant was in no event entitled to a general charge. Further, the charge was incorrect in the assumption of material facts clearly in dispute by the evidence, and, had it been correct, would have eliminated every issue save that of discovered peril. For the reasons indicated, the charge was correctly refused.

The fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-fourth, twenty-fifth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, and thirty-first assignments will be overruled. The issues raised by such assignments are either disposed of by our conclusions in reference to other issues or raise issues which fail to disclose reversible error and a discussion of which would be of no value.

Finding no reversible error in the record, the judgment is affirmed.