TEXAS MIDLAND R. R. v. BUTLER.
(No. 8025.)

(Court of Civil Appeals of Texas. Dallas.
Nov. 30, 1918. Rehearing Denied
Jan. 4, 1919.)

1. NEGLIGENCE ⊚⟿136(14) — QUESTIONS OF
LAW AND FACT.

In actions for personal injuries, whether
the parties exercised the required care is for
the jury, except in cases where the alleged neg-
ligent act is in violation of law, or when the
undisputed facts disclose that it was the proxi-
mate cause of the injury.

2. RAILROADS ⊚⟿350(4, 13) —PERSONAL IN-
JURY ACTIONS—QUESTIONS OF FACT.

In an action against a railroad company for
personal injuries due to plaintiff's horse be-
coming frightened by an approaching train at a
crossing and upsetting the wagon, evidence as
to defendant's negligence in failing to give
warning, either by signal or by its brakeman
then at the crossing, and of plaintiff's exercise
of due care, held to raise questions for the jury.

3. TRIAL ⊚⟿260(8) — INSTRUCTIONS — RE-
QUESTS.

It was not error to refuse an instruction
that defendant railroad was not liable if plain-
tiff's horse was more readily frightened than
an ordinary horse, where the issue of contribu-
tory negligence was sufficiently covered by an
instruction given.

Appeal from District Court, Hunt County;
Wm. Pierson, Judge.

Action by R. D. Butler against the Texas
Midland Railroad. Judgment for plaintiff,
and defendant appeals. Affirmed.

Coke & Coke, of Dallas, Dashiell, Terry &
Brown, of Terrell, and S. W. Marshall, of
Dallas, for appellant.

Clark & Sweeton, of Greenville, for appel-
lee.

RASBURY, J. Appellee sued appellant in
the court below for damages for personal in-
juries alleged to have been the result of the
negligence of appellant in operating one of
its trains over and across a public street in
the town of Greenville, by which appellee's
horses attached to a loaded farm wagon
were frightened, the wagon overturned, and
appellee seriously injured. There was jury
trial and general verdict for appellee, fol-
lowed by appropriate judgment, from which
this appeal is taken.

When the parties had concluded the intro-
duction of testimony, and before the case
was submitted to the jury, appellant re-
quested the court to direct the jury to re-
turn verdict for it, which was refused, and
which refusal is the basis for the first as-
signment of error. The claim is that at
that time the evidence disclosed that the
proximate cause of the injury was unex-

plained or in doubt, and could be attributed
to the negligence of either appellant or ap-
pellee, and as a consequence, the burden of
proof being upon the appellee, he had failed
to make a case, and the peremptory instruc-
tion should have been allowed. The effect of
the contention on analysis is that the evi-
dence is insufficient to sustain the verdict of
the jury. The facts deducible from the evi-
dence and tending to support the verdict of
the jury on the issue raised by the assign-
ment are, in substance, these: Lee street in
Greenville runs east and west. Appellant's
line of railroad runs nearly north and south,
and in its course crosses Lee street. At the
crossing are four rails, two constituting the
main line, two a "Y" line, which leaves the
main line just south of Lee street. Appellee,
accompanied by Sid Reed, was proceeding
west on Lee street, driving a team of mares
attached to a farm wagon loaded with cot-
ton seed, on his way to an oil mill. When he
arrived at the crossing an engine was
switching on the "Y" line. He halted his
team within about 50 feet of the crossing,
awaiting the time when he could safely cross.
At the time appellee halted, an engine, with
three cars attached, headed north and sta-
tionary, was on the main line north of Lee
street about 75 or 100 feet and was observed
by appellee. In time the engine on the "Y"
moved away, and appellee resumed his prog-
ress towards the tracks, looking in advance
at the engine and cars north of the crossing,
and observing that they remained stationary,
and that a man was sitting at the south end
of the train on the cross-ties. He did not
again look in the direction of the engine and
cars. His view of the engine and cars from
the time he resumed his progress was unob-
structed and open. When within but a few
feet of the tracks appellee's companion, Sid
Reed, who was watching the cars on the
main line, while appellee kept a lookout
for the engine on the "Y" track, saw the
train commence backing, and in fear that
they could not get across seized the lines
from appellee and checked the mares. As
the cars approached, the team became fright-
ened and commenced backing, and when the
engine got close the fright of one of them
increased, and in her struggles wheeled
away from the engine and turned the wagon
over, seriously injuring appellee. Traffic at
the point where the accident occurred was at
all times heavy, and those in charge of ap-
pellant's train knew it, and when they com-
menced backing the cars failed to sound the
whistle or ring the bell or give other warn-
ing of the approach of the train, notwith-
standing appellant's brakeman, who signaled
the cars to back, knew that appellee was at
the crossing. He denies, however, that he was
at the end of the cars, as claimed by appel-
lee, but says he was at the crossing, keeping

⊚⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

a lookout for those who might be crossing the tracks. He admits, though, that he was facing west, which would put his back to appellee, and that at the time he signaled the train to back he did not turn to observe whether appellee was moving towards the crossing, but relied upon the fact that when he last saw the team it was stationary.

Appellant in support of its contention relies upon I. & G. N. R. R. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106, and similar cases. In the case cited the evidence disclosed that Edwards, while traveling a road parallel with the railroad, turned obliquely and stepped on the crossing over which he knew trains frequently passed, and was injured by a passing train, the electric headlight of which was visible for a mile, and the noise of which was plainly audible. He founded his right to recover solely on the ground that the engineer of the train did not ring the bell or sound the whistle. In holding the railroad not liable the court declared that Edwards could not "excuse the absence of all care" on his part by showing that the railroad employés were negligent. The holding is but the application to the facts of the familiar rule that, while it is the duty of servants of railroads in approaching crossings to exercise ordinary care in the operation of trains, it is equally and in like manner the duty of the public to exercise the same degree of care in· approaching the tracks of railroads at such crossings.

[1] Whether the respective parties exercised the degree of care required is a question of fact for the jury, save in cases where the act charged as negligence is done in violation of law, or when the facts without controversy disclose that the negligent act was the proximate cause of the injury, which presents alone a matter of law. Lee v. Railway Co., 89 Tex. 583, 36 S. W. 63; Southern Traction Co. v. Owens, 198 S. W. 150.

[2] The facts in the present case which support the verdict of the jury are in no sense consistent with the theory that there was an absence of all care upon the part of appellee when he undertook to cross the railroad tracks. After arriving within about 50 feet of the tracks he halted his team, and made no attempt to cross until the engine on the "Y" was well out of the way, and he had made certain that the engine and cars on the main line remained stationary. These precautions, it will not be denied, constituted ordinary care at that time and as matters stood. The apparent danger at that time was from the engine on the "Y," and that danger was no longer imminent when it moved away. The other engine and cars were and had been stationary from the time of appellee's arrival, and presented no apparent danger. Being stationary and watched by a brakeman, when he resumed his journey he had the right to assume it would remain so until he crossed. But it is argued that from the time he resumed his journey his vision was unobstructed, and he could have seen the engine and cars on the main line when they started had he looked in time to have avoided the injury. While it is true appellee's view was unobstructed, and while it is true that he did not look again at the engine and cars upon the main line for the reason that he was watching the "Y" track against a return of the other engine, it is also true that his companion, Sid Reed, was watching the engine and cars on the main line, and says that they commenced backing after appellee resumed progress, and when his team was within a few feet of the track, and, seeing that the team could not make it across, checked them by taking the lines from appellee. The nearest car was 50 feet away, and it seems obvious that the safe and prudent thing was what Reed did, since it was quite likely that the train would cover the distance to the crossing much quicker than the loaded wagon could traverse it. That the facts at least raise an issue for the jury is, we think, obvious.

[3] Appellant requested the court to charge the jury that if they believed from the evidence that one of appellee's horses took fright at cars more readily than an ordinary horse, and that appellant did not know that fact, and that the fright of the horse, which took fright more readily than an ordinary horse, was the proximate cause of appellee's injury, to find for appellant, etc. The charge was refused, which appellant assigns as error. The facts disclose that both mares were "perfectly" gentle, but that one of them would shy at a train or engine, especially when steam was escaping from the engine. The mare that so shied at trains and escaping steam is the one that wheeled from the engine and caused the wagon to turn over. The court charged the jury on the issue so raised that, if they believed that one of the horses was unsafe and likely to become frightened at trains, and that in driving the horse where he did at the time and under the circumstances appellee failed to exercise ordinary care for his own safety, and thereby contributed to his injuries, to find for appellant. This charge, in our opinion, submits all that was warranted by the evidence. There is in the charge refused that which renders it erroneous for other reasons, but which we need ·not discuss, in view of the conclusions reached with reference to the court's charge.

Finding no reversible error in the record, the judgment is affirmed.