### W. A. BARCLAY v. W. W. DEYERLE.

Decided January 13, 1909.

**1.—Secondary Evidence.**

The rule in Texas is, that no degrees in secondary evidence are recognized.

**2.—Same—State of Accounts.**

Upon the question as to what amount was due to a bank from a bank in another county, the books of which could not be required to be produced in court, testimony of the bookkeeper that they showed a certain balance due was as competent as would be a compared statement of the detailed account from which the balance due could be computed by court and jury.

**3.—Evidence—Books of Account.**

The contents of books of account are not rendered inadmissible by the fact that the entries were made by the bookkeeper, not from his personal knowledge of the transaction, but from memoranda furnished him by other clerks.

**4.—Pleading—Variance.**

Under a plea of contract for sale of the entire stock, $40,000, in a national bank, a writing which recited that the seller "owning and controlling within fifteen shares of all the stock, desires to sell same," and that the purchaser agreed "to buy said 40,000 shares of stock, or so much thereof as B. feels obligated to dispose of along with his own stock," presented no material variance.

**5.—Sale—False Representations—Peremptory Charge.**

Where the uncontradicted evidence showed false representations by the defendant inducing the price paid him by plaintiff on a sale, and the exact damages resulting, a peremptory instruction to find for plaintiff was proper, though the representations were not contained in the written contract for sale.

**6.—Sale—Representations—Knowledge.**

In an action for false representations in a sale of the stock of a bank, as to the amount due it from other banks, it is no defense that the seller made them innocently, being deceived by a defaulting cashier who had falsified the books.

**7.—Venue—Plea of Privilege.**

A plea of privilege to be sued in the county of defendant's residence comes too late after he has answered to the merits, though his privilege was first made available to him by plaintiff's dismissal as to a codefendant after such answer.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Banks & Hair,* for appellant.—The answers of the witness A. Leichardt were incompetent, hearsay, and secondary evidence, none of the facts being within the knowledge of said witness. Sterling v. St. Louis, I. M. & S. Ry. Co., 38 Texas Civ. App., 451; Rogers v. O'Barr, 76 S. W., 593; Watson v. Boswell, 25 Texas Civ. App., 379; Garrett v. Garrett, 47 S. W., 76; Gulf, C. & S. F. Ry. Co. v. Frost, 34 S. W., 167; Gulf, C. & S. F. Ry. Co. v. Baugh, 42 S. W., 245; Soloman v. Crush, 82 Ga., 445.

The contract offered in evidence varied materially in its terms and legal effect from the contract alleged and described in plaintiff's petition. Supreme Council, A. L. of H. v. Anderson, 61 Texas, 296; Texas Homestead B. & L. Assn. v. Kerr, 13 S. W., 1020; Brown v. Martin, 19 Texas, 344; Flores v. Smith, 66 Texas, 115; Case Plow Works v. Morris, 17 Texas Civ. App., 6; Western Union Telegraph Co. v. Smith, 88 Texas, 9; Morris v. Casling, 79 Texas, 141; Sweetzer Pembroke & Co. v. Claflin, 74 Texas, 667; Shipman v. Fulcrod, 42 Texas, 248; 1 Elliott on Evidence, sec. 198.

It was error for the court to assume that plaintiff's contention was right and direct a verdict for plaintiff. The defendant was entitled to have the issue submitted to and passed upon by the jury. Mitchell v. McLaren, 51 S. W., 270; Byers v. Wallace, 87 Texas, 507; Mustain v. Stokes, 90 Texas, 698; Supreme Council, A. L. of H. v. Anderson, 61 Texas, 301.

The writing in evidence being the culmination of all the negotiations between the parties, constitutes and is the contract of the parties, and same by its terms limited appellant's warranty to his obligation to endorse all objectionable paper, reserving the option to retain same as his own at its then present value. Tiedeman on Sales, sec. 182; Lawson on Contracts, sec. 57; Maud v. Coppinger, 23 Texas Civ. App., 128.

The court erred in overruling defendant's plea of privilege. Roan v. Raymond, 15 Texas, 78; Henderson v. Kissam, 8 Texas, 46.

*Sleeper, Boynton & Kendall,* for appellee.—As there are no degrees of secondary evidence, the statement of the witness that the books of the First State Bank of Dallas showed that the balance of the McGregor National Bank was $821.99 was properly admitted by the court. Allerkamp v. Gallagher, 24 S. W., 372; Clagton v. Rehm, 67 Texas, 52; Lewis v. San Antonio, 7 Texas, 288; Simpson v. Edens, 14 Texas Civ. App., 235; Coon v. Renick, 11 Texas, 134.

The character of the book as one of original entry is not affected by the fact that two persons have cooperated in making the entry, one having personal knowledge and reporting to the other, and the other writing down the transaction thus reported. Greenleaf on Evidence (16th ed.), p. 2061; Elliott on Evidence, 462; Fielder v. Collier, 13 Ga., 496; Nelson v. Bank, 69 Fed., 798; Dohmer v. Insurance Co., 96 Wis., 38.

The contract offered in evidence shows that plaintiff did agree to

buy from defendant 40,000 shares of said bank stock, a portion of which, however, it appears from the agreement was not in the possession of defendant, but he was to get all of it that he could and plaintiff was to take all he could get, whereby plaintiff did in effect obligate himself to buy all the shares of said bank. The parties used the term "40,000 shares" evidently inadvertently, as the capital stock of the bank is·shown by the evidence to have been only $40,000. Sherman C. & O. Co. v. Dallas, 77 S. W., 961; Pishkos v. Wortek, 18 S. W., 788; 2·Mechem, sec. 1255.

The evidence shows that the contract in writing was signed after the representations as to the books ·were made and before plaintiff had any opportunity to examine the books and that such representations were collateral to the contract for the purchase of the stock and not at variance with the terms of said contract or contradictory thereto. Mitchell v. Zimmerman, 4 Texas, 75; McCord v. Levy, 21 Texas Civ App., 109; Beatty v. Bulger, 28 Texas Civ. App., 117; Loper v. Robinson, 54 Texas, 510; Lewis v. Taylor, 24 S. W., 92; Sherman O. & C. v. Dallas, 24 S. W., 92; 2 Mechem on Sales, sec. 1255.

Whether or not defendant knew the state of the cash and exchange and assets of the McGregor National Bank at the time when he made the representations in reference thereto to plaintiff and upon which plaintiff acted in purchasing the stock of the bank was immaterial so far as plaintiff's rights in this case are concerned. Loper v. Robinson, 54 Texas, 510; Lewis v. Taylor, 24 S. W., 92; Mitchell v. Zimmerman, 4 Texas, 75.

FISHER, CHIEF JUSTICE.—Appellee, plaintiff below, instituted this suit in the District Court of McLennan County against the appellant Barclay and one Frank Mabry, to recover of the defendants $8180, alleging that on the 20th day of March, 1906, the appellant sold to the appellee the entire capital stock of the McGregor National Bank, being of the value of $40,000, and that at the time appellant represented to appellee that the books of the McGregor National Bank correctly showed the amount due it by other banks, and that said books were correctly kept, but that, as a matter of fact, said books were not correctly kept and did not correctly show the amount due the McGregor National Bank by the other banks; that the defendant Mabry, who was the cashier, manager and bookkeeper of the McGregor National Bank, had misappropriated the funds of the bank to his own use to the amount of $8180, and for the purpose of concealing this misappropriation he falsely kept said books so as to cause the same to show that other banks owed it said sum of $8180 in excess of the real amount that they were owing to it, thereby concealing the shortage, all without the knowledge of appellee; that appellee purchased and paid for the stock, believing that the books of the bank correctly showed the indebtedness of other banks to it, and paid appellant the full contract price agreed upon. On the 18th of April, 1907, the case was called for trial and the parties announced ready, whereupon the appellee dismissed as to defendant Mabry. Thereupon appellant filed and presented a plea of privilege to be sued in the county of Falls, that being the county of his residence, and not the

county of McLennan. This plea was by the court overruled, and we take it from the record that it was overruled on account of the fact that it was filed too late and was after the defendant had filed his answer in the case.

The case was then tried before a jury and the court gave a peremptory instruction to find for plaintiff, the appellee, in the sum of $3150. A verdict was accordingly returned, upon which judgment was entered. This instruction of the court is based upon what is considered the undisputed evidence in the record, and the amount was reduced to $3150 on account of the fact that the bondsmen of Mabry had, subsequent to the time of the discovery of the shortage, paid to the appellee the sum of $5000, leaving the balance covered by the instruction of the court.

It appears from the facts that among the assets included in the purchase were what is known as the "cash and exchange," and the witnesses testified that the latter term means the balance due the McGregor National Bank from other banks. The facts clearly show that the books of the McGregor National Bank contained false entries as to amounts due to that bank from other banks. It was made to appear from the books that the amounts due were greater than was actually the fact, and that the difference amounted to the sum stated in plaintiff's petition. There can be no question but what Barclay represented to the appellee Deyerle that the books were correctly kept, and it appears that Deyerle acted upon that representation and statement of Barclay when the purchase was made.

The first assignment of error complains of the action of the trial court in admitting in evidence answers 11 and 12 of the depositions of the witness Leichardt. The assignment is as follows: "The court erred in admitting in evidence over this defendant's objection the answer of the witness Adolph Leichardt, bookkeeper for the First State Bank of Dallas, to the 11th and 12th direct interrogatories, because said answers were incompetent, hearsay and secondary evidence, and none of the facts being within the knowledge of said witness, as shown by his testimony." These interrogatories, the answer to which is objected to, were propounded by the plaintiff. No. 11 is as follows: "What was the correct balance due the McGregor National Bank from the First State Bank of Dallas, Texas, on the 20th day of March, 1906? Answer: On the 20th day of March, 1906, their balance with us was $821.99." Question 12: "What was the correct balance due the McGregor National Bank from the First State Bank of Dallas, Texas, on March 29, 1906? Answer: On the 29th day of March, 1906, their balance with us was $3821.99." The plaintiff acquired the assets of the bank by purchase on the 20th day of March, 1906. The books of the McGregor National Bank on that day showed that it had to its credit $1811.23 in the First State Bank of Dallas, and the object of this evidence in question 11 was to show that this entry was not correct, that the true amount due the McGregor Bank by the First State Bank of Dallas was $821.99. It appears from the evidence of this witness that the books of the First State Bank of Dallas were located in that city, and that he was the bookkeeper and kept the books of the bank. He did not attach to his

evidence a compared statement of the account between the First State Bank of Dallas and the McGregor National Bank, but stated that he had no independent recollection of the amount due the McGregor National Bank by the First State Bank, and that his answers are based upon what is shown by the books, and it appears that the books of his bank are correctly kept. It is not contended by the appellant that the plaintiff could be required to produce the original books, but that it was improper to allow the witness to testify as to what the balance was, that this fact should have been established by a transcript or examined copy of the account taken from the books of the Dallas Bank. If it were an open question in this State, the writer would be inclined to the view that this is an instance in which degrees in secondary evidence should be recognized (Cornett v. Williams, 20 Wall., 226), for it is clear that an examined and approved copy of the account, as shown by the books of the bank, would be more satisfactory and certain than evidence of a witness as to the contents of the books. Such examined copy would place before the court the means of inspecting the account between the parties, and the jury and the court could from it, by mathematical calculation, determine and ascertain the balance due. This would be a much more satisfactory and certain means of ascertaining the true condition of affairs than would be the calculation made by a witness or the bookkeeper who had inspected the account. But, as before said, the question is not an open one in this State. Our courts have repeatedly held, in adhering to the English doctrine, that there are no degrees in secondary evidence. Allerkamp v. Gallagher, 24 S. W., 372; Loftin v. Nally, 24 Texas, 566; White v. Burney, 27 Texas, 51; Texas Land Co. v. Williams, 51 Texas, 58; Coon v. Renick, 11 Texas, 134; 25 Am. & Eng. Ency. Law (2d ed.), 162.

The original books in which was embraced the account, being those of a third party, were beyond the control of the plaintiff, and he had no means of producing them or requiring them to be produced, they being beyond the reach of a subpoena duces tecum; consequently, their contents could only be established by secondary evidence; and, in recognition of the rule that there are no degrees in secondary evidence, the keeper of the books who had personally examined and inspected the same, could testify to their contents. The evidence of this witness objected to is substantially to the effect that the amount stated by him is the balance due, as shown by the books of the bank; and it is clear from the entire range of his depositions that he is stating what is shown by the books.

What we have just said also disposes of the second assignment.

The question raised in the third assignment is, in part, disposed of by what has just been said, but the additional question is raised that the books of the Commercial National Bank of Houston, from which a transcript of the entries was made, showing the state of the account between that bank and the McGregor National Bank, were not the books of original entry; that the entries as appeared on the face of those books were taken from memoranda of one of the clerks of that bank, or information furnished by one of the employes of that bank to the bookkeeper; but it does appear that the books of

the bank were correctly kept, and that these entries objected to were taken from the books in permanent use by the bank, which showed the state of the accounts with its customers. The entries that went into these books which were testified to by the bookkeeper were taken from memoranda made up by an employe and from information that was received from the McGregor National Bank which passed through the hands of some of the employes of the bank before it reached him. Determining the admissibility of entries from the books of third parties was passed upon by this court in International & Great Northern R. R. Co. v. Startz, 42 Texas Civ. App., 85, and it was there held, citing authority, that it was no objection to the admissibility of entries that they were taken from memoranda furnished by other employes. The evidence bearing upon the books in question, in our opinion, clearly established the fact that they were the original and permanent books of the bank which evidenced the transactions of others who had business with it.

We find no error in the fourth assignment. We can not agree with appellant that there was material variance between the allegations of the petition and the contract offered in evidence.

The fifth assignment complains of the action of the court in giving a peremptory instruction in favor of appellee. There was sufficient evidence in the record to justify the instruction given. It is shown that the appellant represented that the books were correctly kept and would show the true condition of the affairs of the bank. This was found not to be true; that the books represented that they had on deposit with other banks much larger sums than was really the case, and this is the basis of the plaintiff's action. It is predicated upon the falsity of these representations. It makes no difference that Barclay may not have intended to misrepresent the fact and that he relied upon information furnished him by the defaulting cashier, he nevertheless did represent and did state to the plaintiff that the books were correctly kept, upon which information the plaintiff acted. The written contract between the parties, it is true, did not contain a statement to the effect that the books were correctly kept, nor did it appear from any recital contained in the contract what was the amount due the McGregor Bank by the other banks, but it was not violating the principle that a written contract, unambiguous, could not be varied by parol to introduce evidence to establish that representations were made that induced its execution which were proven to be false. Every written contract can be impeached on the ground of fraud, and the fraud so relied upon may consist of misrepresenting the facts upon which the written contract is based.

What we have just said practically disposes of appellant's sixth assignment of error. It makes no difference, as said before, that the appellant actually believed the state of the cash and exchange was as represented upon the books, and that he acted upon the information furnished him by the cashier Mabry. We can concede, and no doubt such was the case, that the appellant did not intentionally deceive the plaintiff, and believed the truth of the statement that he made, but this fact would not affect the right of the plaintiff to

recover. If the plaintiff was misled to his injury, although not intentionally so, he would have the right to recover from the party who by his representations occasioned his loss.

We overrule appellant's seventh assignment of error. The plea of privilege came too late. It was interposed after the defendant had answered. The dismissal of Mabry from the case did not revive any right that he might have had to present such plea before his answer to the merits was filed.

We find no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.