### EL PASO ELECTRIC CO. v. BARKER.
No. 3662.

Court of Civil Appeals of Texas. El Paso.
April 7, 1938.

Rehearing Denied April 28, 1938.

Brown & Brooke, of El Paso, for appellant.

Wilchar & Wilchar, of El Paso, for appellee.

WALTHALL, Justice.

Clara Barker, a feme sole (appellee herein), sued El Paso Electric Company, a common carrier, for personal injuries and recovered damages in the sum of $5,000. She alleged that on or about February 21, 1937, she became a passenger on a bus line operated by appellant on the public streets of El Paso in its capacity as a common carrier. She was traveling from her residence to the business portion of the city. She seated herself in the usual and customary way on the left side of the right front seat facing the front. The other portion of said seat was occupied by another passenger, and the place she took was the only available seat in the bus at the time. She alleged that shortly after taking her seat she was, through defendant's negligence, thrown to the floor of the bus and severely and permanently injured. She alleged that defendant's bus operator was negligent in suddenly swerving the bus and turning to the right at the corner of Copia and Pera streets in the city of El Paso at a rate of speed that was greater than was safe for the passengers, considering the condition of the street at the place where the turn was made; said place being partially unpaved and bumpy and rough. She alleged that defendant was further negligent in failing to provide either a guardrail for the seat or something placed in front of it to which plaintiff could have held, and which would have prevented her being thrown to the floor of the bus when it turned suddenly and sharply to the right, and that defendant was negligent in failing to provide safe seats. She alleged that this last negligence applied specially to passengers of her size, she being a woman of small stature, and the defendant having failed to have an arm on the outside of the seat to prevent one of her size from being thrown into the aisle.

In response to special issues the jury found that plaintiff was thrown from her seat by force incident to a turn to the right at the corner of Copia and Pera streets; that making said turn the bus was not operated at an excessive rate of speed; that the seat occupied by plaintiff lacked a side arm on its outside to prevent a passenger from being thrown from the seat; that it was negligence to fail to provide such a side arm, and that this negligence was the proximate cause of the injury suffered by plaintiff; that the injuries were not the result of an unavoidable accident. From a judgment rendered in conformity to said findings, defendant appeals.

The appellant urges six propositions. The first and second propositions may be considered together, since they are to the effect that there was no evidence to warrant a recovery upon the basis of negligence on account of failure to have a side arm on the outside of the seat in order to prevent a passenger from being thrown therefrom. By the second proposition appellant also insists that issue No. 3 as submitted (being the one inquiring as to whether the seat was without a side arm to prevent a passenger from being thrown

therefrom) was a comment upon the weight of the evidence and assumed that such a seat would have prevented the plaintiff's fall. It was argued that because the defendant produced evidence that the bus involved was of the standard type and standard construction customarily used by transportation companies and there was no contrary evidence upon this point, and no evidence that side arms were ever placed on seats of motorbusses, there could be no possible question raised as to negligence because of failure to place a side arm. Customary methods or conduct do not furnish a conclusive or controlling test of negligence. Taylor v. White, Tex.Com.App., 212 S.W. 656; O'Connor v. Andrews, 81 Tex. 28, 16 S.W. 628; O'Connor v. Curtis, Tex.Sup., 18 S.W. 953; Texas & P. Ry. Co. v. Hughes, Tex.Civ.App., 192 S.W. 1091, writ refused.

Conformity to conduct or usual methods or customs merely amounts to a circumstance to be considered together with other circumstances of the case in determining whether due care has been exercised. Comanche Duke Oil Co. v. Texas P. Coal & Oil Co., Tex.Com.App., 298 S.W. 554; Texas & P. Ry. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 623, 47 L.Ed. 905. As said in the case last above cited: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Citing Wabash R. Co. v. McDaniels, 107 U.S. 454, 2 S.Ct. 932, 27 L.Ed. 605.

In her brief plaintiff quotes and summarizes evidence to the effect that the bus was an "old type bus"; "they had taken off the good busses January 1st and put on the old type busses; instead of letting you lean back the seats tilted you forward; * * * the seat was of leather; it was a slippery seat"; the portion of the street over which the bus was traveling was partially paved; "on the unpaved portion there on Copia Street between Alameda and Pera it was rough going at the time this bus turned to the right, and I (appellee) had no warning; I (appellee) am not quite five feet tall with my shoes on." Another witness (Davis) testified that the street was bumpy and the seat was rather narrow and short for two people to sit on, and when the bus made the turn from Copia to Pera she (appellee) "slid" out; "it was too narrow; she didn't have anything to hold to." The bus operator testified that the street was not paved at the point where the accident occurred, and that it was bumpy at that particular point—bumpier than a paved street. There was a slight dip at the point on Copia street where the bus passed from Copia on and upon Pera, and "if you strike that going fast it has a tendency to throw that part of the bus up to an extent depending on the speed with which you strike it." Another witness (Mary Leasky), testifying for appellant, said of the street at the point where the accident occurred, "it is rough there, and it just knocked or jarred when he turned the corner, and she just slipped off the seat down to the floor. * * * I grabbed at her—tried to grab her when she slipped off, and she tried to grab me." Appellant's brief quotes Lansing Thorne, general superintendent of transportation, as saying that the bus was of standard and customary type or construction in general and customary use by transportation companies over the country, of standard and approved type; that this type had been used by the company since the middle of 1930. "There are some changes in body design and in some motors in some busses." It is noticeable that no evidence is quoted to the effect that it is customary and usual to use busses without side arms upon rough and bumpy streets, which was shown to be the character of Pera street at the point where plaintiff received her injuries. This state of the evidence made a question for the jury, and it cannot be said that their finding was unwarranted. The witnesses were in harmony in testifying that the street was rough, and the bus driver's testimony as to the tendency of the dip at the intersection of Copia and Pera to tilt the bus to an extent dependent upon speed has been quoted.

The objection that the charge was upon the weight of the evidence comes too late. No such objection to the charge was made in clear or specific terms when it was submitted to counsel for appellant. None was made unless it be inferred from the following language: "The defendant objects to question No. 3 submitting the issue as to whether the seat was without a side arm on the outside of the seat to prevent a passenger from being thrown therefrom, for the reason that the Court assumes that it is necessary to have a side arm to prevent passengers from being thrown from the seat, when, as a matter of fact, the undisputed evidence shows in this case that this bus was of a standard type, * * * and there is no evidence to the

contrary, and there is no evidence that side arms are ever placed on the seats of motor busses, and, therefore, could raise no possible question as to negligence in failure to place a side arm." "Objections to charge must be specific, constructive, and helpful and in such form as to enable court to readily understand their scope and meaning, and, if necessary, modify his charge in light thereof." Guillot v. Halman, Tex.Civ.App., 91 S.W.2d 402, and cases therein cited. "Incorrect charge or definition by trial court constitutes no ground for reversal of judgment, unless specific defect therein is clearly pointed out in proper objection thereto." Ohio Casualty Ins. Co. v. Stewart, Tex.Civ.App., 76 S.W.2d 873, 874, and cases cited. However, the issue is not open to the objection made in the brief. It inquires if there was a side arm to prevent a passenger from being thrown therefrom. It offers no suggestion that even were it put there to prevent such a catastrophe it would be effective for that purpose.

■ In its third proposition appellant challenges the form of the issue as to unavoidable accident, insisting that it is in the nature of a general charge and does not submit the issue. The issue was submitted in the following form: "Do you find from a preponderance of the evidence that the plaintiff did not slip from the seat without negligence on either her part or that of the defendant? Answer by the use of the term 'We find that she did not slip without negligence,' or by the term 'We do not so find' as you find from the evidence." The form of the question is not objectionable. Southern Ice & Utilities Company v. Richardson, 128 Tex. 82, 95 S.W.2d 956, 958. The question and answer negatived the idea that the plaintiff's mishap was not the result of the negligence of either of the litigants, and thus met the test as to unavoidable accident. Stedman Fruit Co. v. Smith, Tex.Civ.App., 28 S.W.2d 622. Practically the same form of submission was approved by this court in El Paso Electric Co. v. Beckman, 89 S.W.2d 470, and application for writ of error was dismissed.

■ By its fourth proposition the appellant insists that the charge on the measure of damages was confusing and calculated to permit a double recovery. The charge was in the following language: "In connection with this question you are charged, if you find from a preponderance of the evidence that as a result of such negligence of the defendant, if negligence you have

found, plaintiff has lost time and been prevented from pursuing her avocation and earning money thereat, you may take that into consideration; and if you believe she has suffered mental and physical pain, you may take that into consideration in answering the question; and if you believe from a preponderance of the evidence that plaintiff has not recovered from her personal injuries, if any, so inflicted, and she will be prevented from laboring and earning money in the future, you may take that into consideration; and if you find she will suffer mental and physical pain in the future as a result of her personal injuries, if any, you may take that into consideration in answering the question." The instruction is not subject to the objections made. It submits for consideration four different possible elements of recovery: (1) Lost time (which was necessarily in the past); (2) past mental and physical suffering; (3) future impairment of earning capacity; (4) future mental and physical pain and suffering. These were all proper matters to be considered. No one of them duplicates another. None are submitted more than once. Southern Traction Co. v. Owens, Tex.Civ.App., 198 S.W. 150, writ refused; Breckenridge, etc., Co. v. Hutchens, Tex. Civ.App., 260 S.W. 684, writ dismissed; Foster v. Beckman, Tex.Civ.App., 85 S.W. 2d 789.

■ By its fifth proposition the appellant urges that the court erred in overruling a motion for a new trial because the subject of attorneys' fees and their amount was mentioned and discussed in the jury room. It is difficult to see how a discussion of attorneys' fees is pertinent to the issues raised on appeal. According to the evidence of the jurors, nothing was said upon the subject of attorneys' fees until the answers to all of the other issues had been agreed upon. The only way in which such discussion could injure defendant would be in the matter of inducing jurors to award larger damages than they might otherwise have done. That issue is not in this case for the reason that upon appeal appellant does not claim that the damages were excessive. To reverse upon this ground, then, would be to do so when there is nothing from which it might be inferred that even under appellant's own theories on appeal it could have been injured.

One of the jurors (Bowen) testified that Juror Marner brought up the subject of attorneys' fees. Juror Marner, however,

testified that he made no statement regarding attorneys' fees; that it was a topic of conversation. Bowen, when asked what effect it had upon him, did not reply directly, but said that after allowing certain amounts for fees, court costs, and doctor's and medical bills, "we" decided that would leave her a small sum. He did not testify that it affected his judgment, or that any proposal was made to add to the amount to be awarded to compensate for attorneys' fees. In fact, the evidence of the jurors shows that upon the first ballot, before anything was said upon this subject, there was one juror for $15,000, another for $5,000, a second for $7,500, and the others for $10,-000, with the exception of two, each of whom wished to award $1,000. After the reference to attorneys' fees the great majority of jurors agreed to reduced amounts. When the question of attorneys' fees was brought up, some one immediately said, "Well, that is nothing to us," and the foreman of the jury said, "We had just as well forget that right away." The juror testifying to the last statement did not remember that anything else was said. Another juror said the question of attorneys' fees was mentioned, but "it was killed right away." Two others said they heard nothing said about attorneys' fees. The question of the credibility of the witnesses and the weight to be given to their testimony was for the court. All were before him and he knew the circumstances of the case as revealed by the evidence. Verdicts of juries should not be set aside lightly nor for merely technical reasons. It is but natural that extraneous matters will subject themselves into a general discussion relative to the matters at issue, but unless the discussion is of a character that might possibly affect the verdict in some respect complained of upon appeal, an appellate court would not be justified in putting parties and the public to the expense of another trial. Appellant does not claim that the amount awarded was excessive or that in that particular the judgment was unjust. There was no dispute in the evidence that all other issues had been settled by the jury before this matter was mentioned. There can be no reasonable doubt that the result insofar as appellant complains of it was unaffected by the mention of attorneys' fees.

In International-Great Northern Ry. Co. v. Cooper, 1 S.W.2d 578, the Commission of Appeals held that where the trial court found remittitur was sufficient to cover any possible portion of the verdict that was tainted by the jury's misconduct, such finding should not be disturbed on appeal unless the evidence leaves it reasonably doubtful as to whether the amount so remitted covers the portion so tainted. Same effect: Webster v. Isbell, Tex.Civ.App., 71 S.W.2d 342. In the instant case the failure to challenge the verdict as excessive is equally effective as precluding the idea of injury from the reference to attorneys' fees. As to when discussion of attorney's fees is harmless, see Bradley v. Ry. Co., Tex.Com. App., 1 S.W.2d 861.

Appellant's sixth proposition is to the effect that the court erred in overruling appellant's motion for a new trial because at least one of the jurors stated in effect that the defendant's bus was "not up to regulations required by State Law of passenger carriers." Juror Bowen testified that one juror made such statement, and that the matter was generally discussed. He said that Juror Marner made the remark that he knew that this company did not comply with state regulations for the transportation of passengers and that they were negligent in the respect of not having provided arms on the side to keep the passengers from falling out. Juror Marner testified that he did not make any statement as to what the law required in the equipment of busses, that he did remark that he was familiar with regulations regarding industrial plants, but was not familiar with regulations regarding transportation vehicles. He said "no one admitted any knowledge of it being a State law (requirement as to arms on chairs of seats of busses)." Another juror testified that one of the jurors said that he knew what the state law was, and that it required an arm on the seat. He said, however, that he understood that this juror thought the law required an arm rest on the side of the seat, but did not know whether it related to busses or not. He was talking about transportation facilities. Witness thought he worked for the railroad, and the juror thought he was talking about railroad equipment.

The evidence does not reveal improper conduct requiring a reversal upon the ground urged in the sixth proposition. It was in fact conflicting, and the action of the trial judge in passing upon the conflicting evidence should be respected. For authority upon such a situation, see Kuykendall v. Johnson Funeral Parlor, Tex.Civ. App., 38 S.W.2d 601, citing Texas Employers' Ins. Ass'n v. Eubanks, Tex.Civ.App.,

294 S.W. 905, writ refused, in which it was held that discussion of whether speed of ambulance was regulated by ordinance and whether ambulances usually ran too fast does not amount to misconduct or receiving new evidence.

We have found no reversible error, and the case is affirmed.