**LEYENDECKER et al. v. HARLOW.**

No. 11721.

Court of Civil Appeals of Texas. Galveston.

July 19, 1945.

Rehearing Denied Oct. 11, 1945.

Dyess & Dyess, of Houston, for appellants.

Everett H. Cain, of Anahuac, and Helm & Jones and Albert P. Jones, all of Houston, for appellee.

GRAVES, Justice.

This appeal is from an $18,800 judgment in the appellee's favor against the appellants (J. B. and C. B. Leyendecker), entered by the district court of Chambers County partly upon a jury's answers on special issues submitted and partly from the recited findings of the court itself "from the undisputed evidence," as for damages resulting from personal injuries, along with a diminished value to his automobile, found by the court and jury to have been visited upon the appellee by the negligence of appellants in having left their truck on the main traveled portion of the highway, along which he was driving his own car, until nightfall on July 22 of 1943, unlighted and unattended, into the rear of which, he, having no warning of nor knowledge of such condition, inadvertently drove his car, to his damage as indicated.

Through 52 points, based upon a statement of facts of 440 pages, and a printed double-sized brief of 182 pages, supplemented by oral arguments heard upon the submission of the appeal, appellants earnestly protest against such determination so adverse to them below.

Their first contention, presented in their points 1 to 6, inclusive, is that the trial court erred in striking out and dismissing their plea of privilege to be sued herein in Harris County, where they resided instead of in Chambers County, where the venue had been laid against them, on December 12 of 1944, and in ordering a trial on the merits to then proceed in such County of Chambers.

In the undisputed state of the record, this presentment is overruled, upon the conclusion that appellants were shown to have waived any right they might otherwise have had to urge such plea, at that late date; the suit had been originally instituted on March 24 of 1944 in the Chambers County district court by appellee, R. H. Harlow, as plaintiff, with the two appellants under their trade-name of "U. S. Truck Line," along with the driver of their truck, James Moody King, in his individual capacity, as defendants; King, who then resided in Chambers County, being sued jointly and severally with appellants; all three such original defendants below appeared by the

same counsel (Mr. Dyess, counsel for appellants in this court), and severally answered to the merits of the cause on April 19 of 1944; to meet an exception contained in that original answer, the appellee, Harlow, filed in that court an amended petition on April 24 of 1944, specifically naming the two Leyendeckers as the individuals composing the partnership through which these appellants were so operating the truck herein involved, which was driven by James Moody King, under their trade-name of "U. S. Truck Line."

Thereafter, on May 1, 1944, on the call of the regular setting of the cause for trial, the defendant, J. M. King, such driver of the truck, filed a plea in abatement of the suit as against himself in that court, pursuant to the "Soldiers and Sailors Civil Relief Act," therein advising the court that he had been inducted into the armed forces of the United States; thereupon, appellee, Harlow, in open court dismissed his suit therein against King, but announced ready for trial against appellants, under their trade-name of "U. S. Truck Line"; in consequence, appellants then moved for and procured a continuance to the next term of that court, because of the absence of King, a material witness; the deposition of the truck driver, King, was secured in the interval between the granting of the continuance to U. S. Truck Line and the opening of the December, 1944, term of court. The second amended petition of appellee Harlow was filed on November 22, 1944; the name of King was omitted therefrom as a defendant, in accordance with the dismissal of him in open court of May 1, 1944. At the December term (1944) the case was regularly set for trial on December 11. On that date appellants filed below their plea of privilege. This plea was not filed before the beginning of the December term, but actually on the date of trial. Appellee had been furnished with a copy of this plea on December 9, Saturday before the Monday, on which the trial began.

"When the case was called for trial on December 11, 1944, the filing of the plea of privilege on that morning was called to the attention of the trial judge. Counsel for plaintiff orally moved the court to strike the plea of privilege and to proceed with the trial because said plea had not been filed in due order and had not been filed seasonably. This motion was granted. An exception to this action of the court was allowed. Defendants did not prosecute any appeal from this order, but bring forward assignments of error in the appeal from the judgment rendered in the trial on the merits of the case."

■ As this court reads them, our authorities have, on analogous facts, foreclosed all these complaints against such disposition of the venue question below. Rule 385, Texas Rules of Civil Procedure. Such a final order disposing of a plea of privilege, which expressly is appealable, should be appealed from by filing the record in the appellate court within 20 days thereafter, which was not done in this instance.

■ In the second place, the appellants clearly waived their then-existing right to file their plea of privilege by so filing their answer to the merits of the cause at the preceding term of the court, they, as the "U. S. Truck Line," and their driver of the truck at that time, James Moody King, having, as recited supra, been separately sued jointly and severally. Furthermore, no change whatever of any character in the cause of action so asserted against any one of such original defendants had been made in the appellee's pleadings below, except the mere dismissal, by his oral motion made in open court, of such truck driver as a party defendant.

On the legal equivalent of these facts, the trial court's action is supported by the holding in Barclay v. Deyerle, 53 Tex.Civ. App. 236, 116 S.W. 123, writ of error refused. To the same effect are these further authorities: McClure v. Pair, Tex. Civ.App., 214 S.W. 683; Foster v. Gulf, C. & S. F. R. Co., 91 Tex. 631, 45 S.W. 376; where it was held that the making of a new party plaintiff did not revive the right of a defendant to file a plea of privilege, and that, having answered to the merits, the right to attack the venue as against the original plaintiff had been lost; Holt v. Farmer, Tex.Com.App., 56 S.W.2d 633; Dickson v. Scharff, Tex.Civ.App., 142 S.W. 980; Gold v. Insall, Tex.Civ.App., 8 S. W.2d 542; Wolf v. Willingham, 48 Tex. Civ.App. 536, 107 S.W. 60.

■ In other words, in the distinctive circumstances above recited as obtaining here, it seems clear that a plea of privilege in the way this suit was brought was just as available to the appellants in April as it was in December of 1944, under the holding of our Supreme Court in Tarrant v. Walker, 140 Tex. 249, 166 S.W.2d 900, 902, had they then asserted it in April; but, hav-

ing instead entered a general denial at that time, they sinned away their day of grace by not having done so, and by thereafter waiting seven months beyond the dismissal of their original co-defendant in open court and offering a belated plea of privilege on the date of this trial on December 11 of 1944; especially when at no time had there ever been any change in the cause of action against them.

Neither is the fact that the appellee's motion to strike the plea of privilege was orally made in open court of material consequence, there being no suggestion nor implication whatever that such circumstance was either objected to at the time, or that it brought about an improper result; it was, therefore, waived. Rule 434, Texas Rules of Civil Procedure; Traders & General Ins. Co. v. Collins, Tex.Civ.App., 179 S.W.2d 525; Denbow v. Standard Acc. Ins. Co., Tex.Sup., 186 S.W.2d 236.

Clearly, from the facts stated—the original defendants here having been sued jointly and severally—this was not a situation where necessary parties were involved, hence Subdivision 29a, of R.S. Article 1995, Vernon's Ann.Civ.St. art. 1995, subd. 29a, was not involved.

On the merits, the trial court submitted—in some 34 special issues—what it regarded as the controlling questions of fact raised by both the pleadings and the evidence; indeed, it went further and literally cross-examined the jury by submitting the detailed inquiries from both sides embodying their theories of the case—all the requested issues by the appellants on the points they now make on the appeal having been given by the court in the form they requested them in.

In so doing, the trial court not only followed the admonition of the Supreme Court in Reilly v. Buster, 125 Tex. 323, 82 S.W.2d 931, in prefacing its inquiries with the accepted definitions of "negligence," "proximate cause," "new and independent cause," "ordinary care," and "preponderance of the evidence," but required the jury to further determine whether each act found to be negligent also was a proximate cause of the accident.

The court followed such system in submitting the twofold cause of action on which the appellee sued—that is, his damages for personal injuries and his damages from diminished market value of his car before and after the collision, in accord with the rule declared in Whitley v. Kinsel Motor Co., Tex.Civ.App., 94 S.W.2d 202.

His claim for negligent visitation of the asserted personal injuries upon him was, in turn, grounded upon his averment that "between sundown and dark" on July 22 of 1943, appellants' truck driver parked his truck, in a broken down condition, on the main traveled part of the highway on the same side thereof appellee came along after dark that night about 9 or 9:30, leaving it there unattended, without lights or flares, or any warning device whatever, in consequence of which the appellee, unaware of its presence until just as he hit it, ran into its rear end, suffering as a result thereof the injuries to himself and his car declared upon.

Without exception, all the inquiries so submitted were answered by the jury in the appellee's favor, and, after careful review of the record and the testimony, this court is unable to find that the inquiries submitted did not embody the controlling questions of fact, or that any one of such answers lacked sufficient support in the evidence.

It is true there was some dispute between the parties both as to the precise time at which the truck was so stopped on the highway, and as to whether the collision occurred at 9 o'clock, as contended by appellants, or at or about 9:30, on the night in question, as claimed by the appellee. That difference becomes of no consequence, however, as, in either event, the happening itself was shown and found to have been well after dark. Not only so, but appellants did not successfully attack any of the jury's other findings as to the conditions under which the truck was so parked and left unattended; they do earnestly argue that the truck driver was shown to have parked his truck—through necessity from the simultaneous blowing out of two tires— well before night on that evening, and had hastened to a nearby town to procure assistance and did in fact get back to the scene of the wreck at a few minutes before dark that same evening; but, as indicated, the jury specifically settled these details adversely to appellants, on what this court deems to have been sufficient evidence, which properly ends those controversies.

For instance, on the court's special issue No. 1, the form of which was neither excepted to nor objected to by the appellants, the jury found, in effect, that the

truck was left on the main traveled portion of the highway until after nightfall on July 22 of 1943, and that, under the circumstances, such act was negligence, as that term was defined by the court; not only so, but after each act of negligence upon all other phases of the controversy was found by the jury, under the court's further detailed inquiry, every one of such acts was likewise required to be and was found to have been "a proximate cause of the injury."

Another of such findings was that the truck had been so negligently left on the highway without leaving 15 feet of clear and unobstructed space on the main traveled portion thereof for free passage of other vehicles; further, that it had no lights, flares, or other warning device whatever upon it, was unattended, and remained that way between "sundown and dark," and until at least 9 o'clock P. M., on that night; still another finding was that the collision was not the result of an unavoidable accident.

It would serve no useful purpose to collate authorities holding that such acts constituted actionable negligence, it being well-nigh self-evident that they did.

Accordingly, without enumerating them, all of appellants' points challenging either the legal sufficiency of the issues submitted, or the evidentiary support for the jury's findings thereon, are overruled.

As concerns appellants' insistence—through a number of propositions—that the $800, found by the jury, in answer to special issues 15 and 16, to have been the difference between the reasonable cash market-value of the appellee's Ford automobile immediately prior to and immediately after the collision, was not only lacking in sufficient support in the testimony, but also had been erroneously arrived at, the record made is held to refute this whole position.

█ The appellee sought no recovery on the basis of the repair bill to the car, nor was any issue submitted on that theory of a recovery. It is deemed unnecessary to reiterate, or make a resume of the extended testimony upon this really simple inquiry, since, it is thought, the many objections urged by the appellants to the sufficiency of the testimony offered by the appellee on these inquiries into such market-values went to the weight thereof rather than to their admissibility; the appellee himself testified over the whole field,

as did the witness Mr. Townsend, who had long been an experienced Ford car dealer in that vicinity, especially at Liberty, Texas. Mr. Townsend, who showed himself to be qualified to give a positive opinion upon the values the trial court so directed the jury to find, testified—without any uncertainty—to such values as fully supported the jury's finding, which fact alone brings the testimony here within the rule declared in North East Texas Motor Lines v. Hodges, Tex.Civ.App., 141 S.W.2d 386, 389, affirmed 138 Tex. 280, 158 S.W.2d 487.

The material gist of his testimony was this: That he was experienced in the appraisal of wrecked cars, and familiar with the value of Ford automobiles in the Liberty and Chambers County areas; that he was familiar with the Harlow car, before and after the wreck; that he saw it at least every two weeks, and knew that it was in A-1 mechanical condition; that it was a part of the established business of his employer (McLendon Motor Company) to buy wrecked cars and that this was true in 1943; that, in his opinion, the Harlow car had a market value of $1200; that he saw the car after the wreck at the home of Mr. Harlow in Hankamer, Chambers County, Texas; that he made an estimate of the repairs necessary, but did not offer to repair the car, because the parts were not available; that, in his opinion, the car had a reasonable cash market value of $275, after the wreck; that there was no such thing as an exact market value for wrecked cars, and that they were worth what he, or the next fellow, or somebody else, might give for it.

█ In such circumstances, the Dallas Court of Civil Appeals thus stated the law in the Hodges case:

"Where a witness swears positively to the market value of an article the fact that his testimony tends to show that he does not in fact know the market value merely weakens his estimate and leaves it to be weighed by the jury."

█ A somewhat similar attack, amphibiously, is made against the submission of, the findings on, and the consequent allowance by the court and jury of the $18,000 as reasonable compensation to the appellee for the personal injuries found to have been sustained by him, the elements of which, as submitted by the court under its special issue No. 14, included: (a) Physical pain between the dates of the in-

jury and trial below; (b) mental anguish for the same period of time; (c) reasonably probable physical pain in the future beyond the date of the trial; (d) reasonably probable mental anguish in the future beyond the date of the trial; (e) lost earning capacity from the date of the accident to the date of the trial; (f) "the reasonable present cash value of such diminished earning capacity, if any, as you may find from a preponderance of the evidence he will in reasonable probability sustain in the future, beyond the date of this trial."

■ All of appellants' assignments challenging the manner and legal sufficiency of such submission of that damage issue are overruled, especially the claim therein that they permitted a double-recovery by the appellee, under the holding that our authorities leave no room for doubt that mental anguish and physical pain are separate and distinct elements of damage for personal injuries. Texas Cities Gas Company v. Dickens, Tex.Civ.App., 156 S.W.2d 1010, affirmed 140 Tex. 433, 168 S.W.2d 208; Willis v. Smith, Tex.Civ.App., 120 S.W.2d 899; El Paso Electric Co. v. Barker, Tex. Civ.App., 116 S.W.2d 433, reversed on other grounds 134 Tex. 496, 137 S.W.2d 17; El Paso Electric Co. v. Beckman, Tex.Civ. App., 89 S.W.2d 470; Port City Lumber Co. v. Markell, Tex.Civ.App., 9 S.W.2d 449.

■ Moreover, counsel for appellants did not at the trial request any limiting instruction in writing with reference to their theory of double-recovery, asserted on appeal, hence that claim was waived; Rule 279, Texas Rules of Civil Procedure.

As indicated supra, it is the finding of this court that the testimony sufficiently supported the right of the appellee to recover for each and all of the specified elements of damage, as so correctly submitted by the trial court.

■ This holding includes the amount of the $18,000—allowance, as against appellants' urging that it was so excessive as to indicate that it had been arrived at by the jury as the result of prejudice, or some other improper feeling, rather than from a fair and reasonable appraisement of the evidence before it.

A careful review of the testimony upon this feature convinces this court that appellants' view that the amount was excessive proceeds from their own conception that the appellee's injuries were inconsequential, rather than from an unbiased consideration of what to this court was satisfactory evidence to the contrary—that is, that the appellee was clearly shown, through admissible testimony from many professional and lay witnesses, to have suffered a very serious and permanent disability; indeed, it was in evidence that prior to his injury he was earning approximately $400 per month, whereas in the 18 months immediately thereafter he was able to earn only about $300; that such disability had continued until this trial and was permanent, hence it thereupon became the proper province of the jury to estimate his probable damages, both from the evidence before them and their common knowledge of human experience. 13 Tex.Jur., page 178, Sec. 85 et seq.; McIver v. Gloria, Tex.Civ. App., 163 S.W.2d 890, affirmed 140 Tex. 566, 169 S.W.2d 710.

In this connection, our courts have further held that physical pain and mental anguish as such elements of damages from personal injuries do not have to be proved with certainty, but may be reasonably presumed from the infliction of so serious a bodily injury as was shown and found to have been sustained in this instance; 13 Tex.Jur., page 382; Wells v. Ford, Tex. Civ.App., 118 S.W.2d 420, and authorities cited.

Mr. Harlow was 41 years of age at the time of his injury, having a high earning capacity, as already indicated, and having a long expectancy; the physician who had attended him for the 17 months between the injury and the trial, testified there had been no improvement at all in his condition, that in his opinion there would never be any, and that the injuries he had suffered in this wreck had been the cause both of his suffering and of the disability he found.

There was ample corroboration from a number of other witnesses, who showed themselves fully qualified to give their own opinions and observations upon the questions so at issue.

■ While it is well settled that each case of this sort must be measured primarily upon its own facts in accord with the principles applied in Peden & Steel Co. v. Claflin, Tex.Civ.App., 146 S.W.2d 1062, and Pure Oil Company v. Crabb, Tex.Civ. App., 151 S.W.2d 962, this court is unable

—especially under the showing that this appellee's previously large earning capacity had been almost totally destroyed, except for an average of less than $20 a month for 17 months following the injury, and that in all reasonable forecast it would never be restored—to hold that the verdict was excessive.

■ Furthermore, appellants are not now entitled to challenge on appeal the manner and form of the submission of their defensive issues, which covered their whole theory of the case—this because, as above recited, the trial court submitted every substantial defense they set up in 17 out of the 34 total issues it gave the jury, just as appellants requested them; that is, of the total 34 issues submitted, 17 to 34, inclusive, were those so requested and worded by the appellants themselves. They neither excepted nor objected to the court's charge so submitting their requested issues, but waited until after the verdict thereon to be dissatisfied with any one of them. They therefore waived each and every one of the points they now present in this court, seeking to have the trial court's action upon those issues overhauled. Rule 272, Texas Rules of Civil Procedure; A A A Conditioning & Mfg. Corp. v. Barr, Tex.Civ. App., 186 S.W.2d 825.

In any event, however, as forecast above, this court is of the opinion that such issues were properly submitted by the court as embodying the defenses declared upon and testified to by the appellants, and that the jury's answers thereto, which, in substantial substance and meaning, were adverse to them were sufficiently supported by the testimony. Consequently, no reversible error upon that feature of the cause has been pointed out anyway.

■ There are also a large number of objections to the court's rulings upon the admission and exclusion of different features of the testimony; but, after a careful review of the record, this court is unable to hold that any of those urged should be sustained; if in fact any one of them involved error, it is not thought to have been such as was reasonably calculated to cause and probably did cause the rendition of an improper judgment against appellants. Rule 434, Texas Rules of Civil Procedure.

Further discussion of this voluminous record is deemed unnecessary, since it is thought the conclusions stated determine the controlling merits of the appeal; they require an affirmance of the trial court's judgment; it will be so ordered.

Affirmed.